# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> ) <br> v. ) <br> ) <br> WAYNE EDWARD SPRINGFIELD, ) <br> AKA "MICHAEL E. SPRINGFIELD," ) <br> TARA ANTIONETTE JOHNSON, ) <br> ) <br> Defendants. ) | Case No. CR406-390 |

## REPORT AND RECOMMENDATION

Defendant Tara Johnson has moved to suppress certain statements that she made to federal agents following her arrest on December 15, 2006. Doc. 36. Defendant alleges that she was subjected to interrogation or its functional equivalent after she requested a lawyer and without first being advised of her rights under Miranda v. Arizona, 384 U.S. 436 (1966). Doc. 43. An evidentiary hearing was held on this matter on April 9, 2007. Because the evidence establishes that defendant's statements were made spontaneously and were not the product of any interrogation

or questioning by the arresting agents, defendant's motion to suppress should be DENIED.

## I. Background

On December 15, 2006, defendant Tara Johnson[1] was arrested outside of her home in Savannah, Georgia pursuant to an indictment charging her and her husband with conspiring to possess and distribute crack cocaine and with three counts of distributing that drug. Doc. 1. Defendant was handcuffed and placed in the back of a police car while officers searched for defendant's husband, who fled from their residence when the agents approached. When DEA Task Force Agent Geraldine Spears asked defendant why her husband was running, defendant made no response. Although the officers had yet to administer <u>Miranda</u> warnings to defendant, she requested a lawyer at this time. The agents, with defendant as a passenger in their vehicle, searched the area for defendant's husband for approximately thirty to forty-five minutes before transporting defendant to a DEA office, a trip lasting some five to

---

[1]Defendant testified that she is married to co-defendant Michael Springfield and that she now uses Springfield as her last name.

ten minutes. No statements were made to or by defendant during this initial transport.[2]

After defendant's arrival at the DEA office, she was subjected to the normal booking process, which included obtaining her personal history, photograph, and fingerprints. Because defendant had invoked her right to counsel, agents did not attempt to interrogate defendant while she was held at the DEA office, and they made an effort to make her comfortable.[3] Defendant remained at the DEA office for approximately one hour before being placed in a second transport to the Effingham County detention center. After securing defendant in the back of the second police vehicle, Agent Spears placed a copy of the arrest warrant on defendant's lap so that she could read it.[4] Upon reading the

---

[2] Although Agent Spears testified that both she and defendant were silent during the trip to the DEA Office, defendant asserts that Agent Spears made the following statements: "Why is Michael running?"; "He must not love you."; "Michael must not love his mother"; "Michael didn't visit his mother in jail"; and "We know everything." Defendant claims that very similar statements were made by the agents when they later transported her from the DEA office to jail. After considering the conflicting testimony and assessing the credibility of the witnesses, the Court finds that no statements were made to defendant during her preliminary transport to the DEA office.

[3] Defendant testified that because she was diabetic and had not eaten, DEA agents gave her a bagel and coffee and treated her nicely.

[4] It is the DEA's standard operating procedure to provide arrestees a copy of the arrest warrant.

3

warrant, defendant made a number of potentially incriminatory statements.

Toward the end of the approximately forty-five minute drive to the jail, Agent Spears suggested to defendant that if she had any influence over her husband, she should tell him to turn himself in because otherwise he would be classified as a fugitive and could face additional charges. When defendant responded that they were a team, Agent John Stephens stated that "if he loved you, he'd be sitting right next to you in the car on the way to the jail." Defendant alleges that Agent Spears again asked her why her husband had run and made the following statements: "He must not love you"; "if Michael doesn't turn himself in, then we will put a warrant out for him"; "no matter where Michael goes, the U.S. Marshals will find him"; and "if the U.S. Marshals get behind Michael, they will shoot him."[5]

---

[5]Agent Spears admitted that she told defendant that the U.S. Marshals would find her husband and that they would place him in fugitive status if he did not turn himself in, but she denied saying that they would put a warrant out for him, as there was already a warrant for his arrest, or that the marshals would shoot him. Because defendant's incriminating statements were made *prior* to the suggestion that she encourage her husband to turn himself in, the specifics of the agents' comments are not particularly relevant in assessing the admissibility of defendant's earlier statements. The Court, however, does not credit defendant's testimony that she was told her husband would be shot by the marshals.

## II. Analysis

It is of course well settled that law enforcement officials may not conduct a custodial interrogation of a suspect without first advising him of the rights guaranteed by the Fifth Amendment. Miranda v. Arizona, 384 U.S. 436, 471 (1966). Miranda determined that any custodial interrogation of a suspect involves "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." The Court therefore created a conclusive presumption that evidence produced by custodial interrogation is coerced unless the suspect is first informed "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed," during any questioning. Id. at 444. If the suspect indicates "in any manner" that he wishes to consult with an attorney, "the interrogation must cease until an attorney is present." Id. at 444, 474. Once a suspect has expressed his desire to deal with the police only through counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further

communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

First of all, there is no credible evidence in the record that the agents subjected defendant to any form of interrogation before or during the making of the challenged statements. The Miranda safeguards apply only to a defendant who is both "in custody" and subjected to "interrogation." Miranda v. Arizona, 384 U.S. at 468. The Supreme Court later defined "interrogation" as referring to both express questioning by the police and "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Here, federal agents neither expressly questioned defendant nor did anything that was either calculated or likely to induce defendant to make an incriminating statement. At the time of defendant's arrest, but before she requested an attorney, Agent Spears asked why defendant's husband was running from the police. Approximately an hour and forty minutes later, after initial processing, Agent Spears gave defendant the warrant, at which time she proceeded to make the incriminating

statements that she is now attempting to suppress. Only *after* defendant made these statements did the federal agents make the comments about her husband that were allegedly an interrogation or the functional equivalent thereof.[6] Furthermore, there is no evidence that the federal agents tried to frighten defendant or make her uncomfortable so as to "compel" her to make incriminatory statements; in fact, defendant testified that the agents had treated her well. The evidence establishes that defendant made the statements spontaneously after reading the arrest warrant, not during a custodial interrogation.

"'Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis, 446 U.S. at 300. Thus, Miranda was never meant to apply to all statements taken by the police after a person has been taken into custody, but only to those statements that result from "express questioning or its functional equivalent." Id. at 300-301. Advising a suspect about the charges after she specifically

---

[6] Because the agents' comments were made after the statements that defendant seeks to suppress, the Court need not decide whether they did in fact constitute the functional equivalent of an interrogation.

7

requests such information[7] has never been construed to be the "functional equivalent" of interrogation. See Enoch v. Gramley, 70 F.3d 1490, 1500 (7th Cir. 1995)("Briefly reciting to a suspect in custody the basis for holding him, without more, cannot be the functional equivalent of interrogation."); United States v. Payne, 954 F.2d 199, 202 (4th Cir. 1992)("the Innis definition of interrogation is not so broad as to capture within Miranda's reach all declaratory statements made by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges."); United States v. Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984)(merely explaining to a suspect why he is being arrested does not constitute interrogation); Plch v. Coplan, 2004 WL 1932825, at *4 (D.N.H. Aug. 31, 2004). Informing a suspect of the charges is "normally attendant to arrest and custody" and is therefore excluded from the definition of "interrogation." Rhode Island v. Innis, 446 U.S. at 301. Thus, despite defendant's request for a lawyer, Agent Spears did not run afoul of Miranda's teachings by simply placing the arrest warrant in defendant's lap and thereby informing her of the charges for which she was indicted.

---

[7]Defendant testified that she asked to see the warrant at the DEA office.

## III. Conclusion

Defendant's incriminatory statements during her transport to the Effingham County detention center were not made in response to government questioning but constituted a spontaneous, unprompted utterance. As such, these statements are admissible despite the absence of Miranda warnings and defendant's request for an attorney. As there was no violation of defendant's constitutional rights, her motion to suppress should be DENIED.

SO REPORTED AND RECOMMENDED this 13TH day of April, 2007.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA